FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| TANGLE, INC., | No. 23-3707 |
| *Plaintiff - Appellant*, | D.C. No. 4:23-cv-01196-JSW |
| v. | |
| ARITZIA, INC.; ARITZIA LP; UNITED STATES OF ARITZIA, INC., | OPINION |
| *Defendants - Appellees*. | |

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Argued and Submitted October 11, 2024
San Francisco, California

Filed January 14, 2025

Before: Lucy H. Koh and Anthony D. Johnstone, Circuit Judges, and Michael H. Simon, District Judge.[*]

Opinion by Judge Simon

---

[*] The Honorable Michael H. Simon, United States District Judge for the District of Oregon, sitting by designation.

### SUMMARY[**]

**Copyright**

The panel affirmed the district court's dismissal of a claim of trade dress infringement, reversed the district court's dismissal of a claim of infringement of copyright in kinetic and manipulable sculptures, and remanded.

As to the copyright claim, the panel held that, at the pleading stage, the plaintiff adequately alleged valid copyrights in seven kinetic and manipulable sculptures. Comparing the plaintiff's works to dance, movies, and music, the panel held that the fact that the works moved into various poses did not, by itself, support the conclusion that they were not "fixed" in a tangible medium for copyright purposes. The panel also held that, under the "extrinsic test," the plaintiff validly alleged copying of its protected works because it plausibly alleged that the creative choices it made in selecting and arranging elements of the works were substantially similar to the choices the defendants made in creating their own sculptures.

As to the claim of trade dress infringement under the Lanham Act, the panel affirmed the district court's dismissal for failure to give adequate notice of the asserted trade dress.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Matthew L. Schwartz (argued), Boies Schiller Flexner LLP, New York, New York; Beko O. Reblitz-Richardson and Sean P. Rodriguez, Boies Schiller Flexner LLP, San Francisco, California; James W. Lee, Boies Schiller Flexner LLP, Miami, Florida; for Plaintiff-Appellant.

Richard P. Sybert (argued), James V. Fazio III, and Hazel Mae B. Pangan, Gordon Rees Skully Mansukhani, San Diego, California; John P. Margiotta and Brian Leary, Fross Zelnick Lehrman Zissu PC, New York, New York; for Defendants-Appellees.

**OPINION**

SIMON, District Judge:

This appeal primarily involves the copyrightability of kinetic and manipulable sculptures, which is an area of copyright law that has not yet received much attention. We reverse the district court's dismissal of the plaintiff's copyright claim and hold that, at the pleading stage, the plaintiff has adequately alleged valid copyrights and has adequately alleged copying of its protected works. Ultimately, the copyright analysis applicable to the kinetic and manipulable sculptures at issue in this case may be better informed with a more complete factual record.

I.

As relevant here, Plaintiff-Appellant Tangle, Inc. ("Tangle") holds copyright registrations for seven kinetic and manipulable sculptures. Each sculpture is made from

either 17 or 18 identical, connected, 90-degree curved tubular segments (*i.e.*, one-quarter of a torus), typically made of chrome, that can be twisted or turned 360 degrees where any two segments connect. By twisting or turning a segment, the sculpture can be manipulated to create many different poses.

Defendants-Appellees Aritzia, Inc., Aritzia, L.P., and United States of Aritzia, Inc. (collectively, "Aritzia") own and operate approximately 121 upscale retail stores in the United States and Canada that sell "lifestyle apparel." In 2023, Aritzia decorated its retail store windows with eye-catching sculptures made with 18 identical, connected, 90-degree curved tubular segments that can be twisted or turned 360 degrees where any two segments connect. In contrast to Tangle's copyrighted sculptures, however, Aritzia's sculptures were substantially larger and taller, and were of a different color, than Tangle's copyrighted works. Additionally, Aritizia's sculptures had a chrome finish, whereas all but one of Tangle's registered works have a matte finish.

In its original complaint, Tangle alleged only copyright infringement, under the Copyright Act of 1976—specifically, 17 U.S.C. § 501(a). Aritzia moved to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. After the district court granted Aritzia's motion with leave to replead, Tangle filed an amended complaint, still alleging only copyright infringement. Aritzia then moved to dismiss Tangle's amended complaint. The district court granted that motion, again giving Tangle leave to replead. Tangle then filed a Second Amended Complaint ("SAC"), which is the operative pleading.

(5 of 14), Page 5 of 14
 Case: 23-3747, 01/14/2025, DktEntry: 42.1, Page 5 of 14

TANGLE, INC. V. ARITZIA, INC.                5

In its SAC, Tangle continued to allege copyright infringement but also added—for the first time—a claim of trade dress infringement, under the Lanham Act— specifically, 15 U.S.C. § 1125(a). Aritzia moved to dismiss both claims under Rule 12(b)(6). The district court granted Aritzia's motion, dismissed both claims, and gave Tangle leave to file a third amended complaint. Tangle, however, declined to replead. Instead, Tangle gave formal notice of its intent not to amend, electing the procedure described in *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065 (9th Cir. 2004) (explaining that after a district court dismisses a complaint under Rule 12(b)(6) with leave to replead, if the plaintiff "timely responds with a formal notice of [its] intent not to amend, the threatened dismissal merely ripens into a final, appealable judgment"). Based on Tangle's timely notice of its intent not to amend, the district court entered an order dismissing both claims with prejudice, from which Tangle now appeals. The district court's decision well summarizes the facts and shows the photographs of both sets of sculptures, Tangle's and Aritzia's, that were included in the SAC. *See Tangle, Inc. v. Aritzia, Inc.*, 698 F. Supp. 3d 1180 (N.D. Cal. 2023).

We have jurisdiction under 28 U.S.C. § 1291. We review de novo a district court's dismissal for failure to state a claim under Rule 12(b)(6). *See Hanagami v. Epic Games, Inc.*, 85 F.4th 931, 938 (9th Cir. 2023) (citing *Wilson v. Lynch*, 835 F.3d 1083, 1090 (9th Cir. 2016)). For the reasons explained below, we reverse the district court's dismissal of Tangle's copyright claim but affirm the district court's dismissal of Tangle's claim of trade dress infringement.

## II.

To state a claim for copyright infringement, Tangle must plausibly allege (1) that it owns a valid copyright in its sculptural works, and (2) that Aritzia copied protected aspects of Tangle's expression. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

Regarding the first element, Aritzia argues that Tangle's registered copyrights for its kinetic and manipulable sculptures are valid only to the extent they seek protection for specific poses, but not for the works' full range of motion. Aritzia contends that moveable sculptures, no matter how original, can be the subject of a valid copyright only in specific poses because they are otherwise not "fixed in any tangible medium of expression," as required by the Copyright Act. 17 U.S.C. § 102(a). We disagree.

Under § 102 of the Copyright Act, "[c]opyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression . . . from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." *Id*. Works of authorship include "sculptural works." *Id.* § 102(a)(5). Section 102 concludes, however: "In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." *Id.* § 102(b).

That limitation, "along with the need to 'fix' a work in a 'tangible medium of expression,' have often led courts to say, in shorthand form, that, unlike patents, which protect novel and useful ideas, copyrights protect 'expression' but

not the 'ideas' that lie behind it." *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 18 (2021). As we explained in *Hanagami*:

> [A] defendant cannot be held liable for copying only "ideas" or "concepts" from a plaintiff's work. Instead, to be liable for copyright infringement, a defendant "must . . . copy enough of the plaintiff's expression of those ideas or concepts to render the two works 'substantially similar.'"

85 F.4th at 941 (quoting *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1119 (9th Cir. 2018), *overruled in part by Skidmore v. Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (en banc) (second alteration in original)).

Contrary to Aritzia's assertions, the fact that Tangle's works move into various poses does not, by itself, support the conclusion that they are not "fixed" for copyright purposes.[1] *See, e.g.*, *Hanagami*, 85 F.th at 935 ("Dance is one of the oldest forms of human expression. Recognition of dance as a form of copyrightable subject matter, however, is a far more recent development."). A motion picture "moves" from frame to frame, as does a symphony, from note to note, yet both can be protected under copyright law. Light and sound, of course, are intangible, so movies and symphonies must be reduced to the print of a film or score to achieve sufficient fixation "in a tangible medium." But that does not detract from the fact that the core, copyrightable expression of such works involves motion. Also, we are unaware of any appellate case holding that expression involving motion, like

---

[1] Indeed, such a rule could foreclose copyright protection for scores of works from seminal artists such as Alexander Calder, Jean Tinguely, and George Rickey.

a moveable sculpture, *per se* cannot be afforded copyright protection because it is not "fixed."**2**

Like dance, movies, and music, a moveable sculpture like Tangle's is sufficiently "fixed" to be entitled to copyright protection, even when its pose changes. Under the Copyright Act, a work is "'fixed' in a tangible medium of expression when its embodiment in a copy . . . is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." 17 U.S.C. § 101. "Copies" are simply "material objects . . . in which a work is fixed . . . ." *Id.* As explained by Professor Jani McCutcheon:

> Is there a fundamental barrier to a changeable creation being a work? I think the answer is no. *The work can be identified in a volatile, changeable creation, because the volatile, changeable creation is the work.* If the work is, in essence, the author's mental conception, there is no fundamental obstacle to the author conceiving a moving, shape-shifting thing.

---

² The extensive body of copyright decisions has not yet seen many cases involving the copyrightability of kinetic and manipulable sculptures. In their briefs, both sides discuss the Seventh Circuit's decision in *Kelley v. Chicago Park District*, 635 F.3d 290 (7th Cir. 2011), a case that involves the copyrightability of a garden, which—like all natural gardens—grows and eventually dies. Although *Kelley* is both factually and legally distinguishable from the situation here, one aspect of that case is instructive. The issues in *Kelley* reached the Seventh Circuit after a trial on the merits, *id.* at 295, not at the pleading stage. Here, this case reaches us at the pleading stage, after the district court granted Aritzia's motion to dismiss and Tangle declined to replead a third time. As in *Kelley*, a more fully developed factual record may assist the ultimate analysis of the copyright issues presented.

> The copy is just a record of the author's intellectual conception, whether motile or not. Do the definitions of "copy" or "fixed" mandate stasis? Again, the answer is no. The Act does not require the copy to be inert. A copy is the "material object . . [and] [m]aterial things may move and change shape.

Jani McCutcheon, *Shape Shifters: Searching for the Copyright Work in Kinetic Living Art*, 64 J. COPYRIGHT SOC'Y USA 309, 337-38 (2017) (footnotes omitted; emphasis added). Here, Tangle's sculptures are material objects, so they qualify as "copies." *See* 17 U.S.C. § 101. In addition, those material objects can be "perceived" and "reproduced" for more than a "transitory" period. *See id.* As embodied in the sculptures, Tangle's expression therefore is "'fixed' in a tangible medium," even though the sculpture may take different poses. Tangle's registered copyrights are thus valid and protect its works across their full range of motion.

We next address the second element of Tangle's copyright infringement claim—whether Aritzia has copied protected aspects of Tangle's expression. This element has "two distinct components: 'copying' and 'unlawful appropriation.'" *Rentmeester*, 883 F.3d at 1117 (collecting authorities). Here, Aritzia does not dispute that Tangle has adequately alleged copying of its copyrighted sculptures.

To establish unlawful appropriation, a plaintiff must demonstrate that the allegedly infringing work and the copyrighted expression "share *substantial* similarities." *Skidmore*, 952 F.3d at 1064 (citing *Newton v. Diamond*, 388 F.3d 1189, 1193 (9th Cir. 2004)). "[W]e use a two-part test

to determine whether the defendant's work is substantially similar to the plaintiff's copyrighted work." *Id.* (citing *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002)). At the pleading stage, a court may only apply the first part of the test, what we call the "extrinsic test."[3] This "assesses the objective similarities of the two works, focusing only on the protectable elements of the plaintiff's expression." *Rentmeester*, 883 F.3d at 1118. In essence, this test asks whether—based on articulable, objective factors—*any* reasonable juror could find that the allegedly infringing work is substantially similar to the copyrighted expression. *See Cavalier*, 297 F.3d at 822. The extrinsic test thus serves to screen out objectively meritless claims, so courts can apply it as a matter of law. *See Rentmeester*, 883 F.3d at 1118. However, "because most judges are not sufficiently trained in the specifics of the art form at issue to make reliable conclusions about similarity" without the benefit of expert testimony, it is "generally disfavored for copyright claims to be dismissed for lack of substantial similarity at the pleading stage." *Hanagami*, 85 F.4th at 945 (citing *Williams v. Gaye*, 895 F.3d 1106, 1119 (9th Cir. 2018)).

Applying the extrinsic test requires that we first determine whether a work contains "protectable elements"

---

[3] The second part, known as the "intrinsic test[,] requires a more holistic, subjective comparison of the works to determine whether they are substantially similar in 'total concept and feel.'" *Rentmeester*, 883 F.3d at 1118 (quoting *Cavalier*, 297 F.3d at 822). In contrast to the extrinsic test—which asks only whether a reasonable juror *could* find substantial similarity based on objective metrics—the intrinsic test asks whether a particular factfinder *does* find the two works to be substantially similar as a subjective matter. As such, "the intrinsic test is reserved exclusively for the trier of fact." *Williams v. Gaye*, 895 F.3d 1106, 1119 (9th Cir. 2018). Because this case comes to us at the pleading stage, we deal only with the extrinsic test.

under the Copyright Act. To do so, we must "'filter out' the unprotectable elements of the . . . work—primarily ideas and concepts, material in the public domain, and scènes à faire (stock or standard features that are commonly associated with the treatment of a given subject)." *Rentmeester*, 883 F.3d at 1118. "Still, 'substantial similarity can be found in a combination of elements, even if those elements are individually unprotected.'" *Williams*, 895 F.3d at 1119–20 (quoting *Swirsky v. Carey*, 376 F.3d 841, 848 (9th Cir. 2004)). Here, the individual elements of Tangle's sculptures—the number of segments, the uniformity of those segments, their exact shape and proportions, the end-to-end connection of the segments in a closed loop, and their connection via joints that allow the segments to be turned 360 degrees—may be unprotected "when viewed in isolation." *Rentmeester*, 883 F.3d at 1119. But "[w]hat *is* protectable is [Tangle]'s 'selection and arrangement of the [sculpture's] otherwise unprotected elements.'" *Hanagami*, 85 F.4th at 943 (quoting *Rentmeester*, 883 F.3d at 1119). That original "combination" of the number, uniformity, shape, proportion, and mode of connection of the segments is what "receives protection, not any of the individual elements standing alone." *Rentmeester*, 883 F.3d at 1119. Further, Tangle's particular arrangement of those elements enjoys "broad" copyright protection because a "wide range of possible expression" can result from different choices about the number, shape, and proportions of segments used in a sculptural work, whether to make the segments uniform, and how to connect them. *See Hanagami*, 85 F.4th at 947. Thus, to establish that Aritzia unlawfully appropriated Tangle's protected expression, Tangle need only show that

Aritzia's allegedly infringing sculptures are "substantially similar" to Tangle's copyrighted works. *Id.*[4]

Next, we must "compare the selection and arrangement of elements in the registered . . . work[s] with that in the allegedly infringing work[s]" to determine whether Tangle has alleged substantial similarity. *Id.* at 944. We hold that Tangle "has plausibly alleged that the creative choices [it] made in selecting and arranging elements of [the protected works] . . . are substantially similar to the choices [Aritzia] made in creating" its sculptures. *See id.* at 945. Tangle has alleged that Aritzia's sculptures, just like Tangle's, are made from 18 identical, connected, 90-degree curved tubular segments (*i.e.*, one quarter of a torus) that can be twisted or turned 360 degrees where any two segments connect, allowing the sculpture to be manipulated to create many different poses. That is enough to allow Tangle's copyright claim to proceed past the pleading stage. Although Tangle's and Aritzia's sculptures may differ in other respects, like their overall size or specific poses, the works are "similar enough that 'the ordinary observer, unless he set out to detect the[se] disparities, would be disposed to overlook them.'" *Rentmeester*, 883 F.3d at 1121 (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir.

---

[4] Aritzia argues that Tangle's sculptures "contain[] only a narrow range of possible expression and a limited range of creative choices," so they have "'thin' copyright protection, and infringement occurs only if another work is 'virtually identical' to [them]." *Hanagami*, 85 F.4th at 947 (quoting *Mattel, Inc. v. MGA Ent., Inc.*, 616 F.3d 904, 913–14 (9th Cir. 2010)). A more complete record may show that the sculptural elements can be combined only in a few ways and that Tangle's works are infringed only by "virtually identical" arrangements. *See id.* at 948. But for now, a showing of substantial similarity will suffice for Tangle's claim to proceed.

1960)). Perhaps discovery and expert opinions may clarify these issues, and perhaps a jury may need to decide whether Aritzia's sculptures are substantially similar to Tangle's sculptures under the intrinsic test. *See id.* at 1118. But these are questions best saved for a later day. Accordingly, we reverse the district court's dismissal of Tangle's claim of copyright infringement.

### III.

The district court also dismissed Tangle's first—and only—pleading of its claim of trade dress infringement, stating that Tangle did not give adequate notice of its asserted trade dress.[5] The district court held that Tangle failed to allege a complete recitation of the concrete elements of its alleged trade dress. The district court explained that "[b]ecause trade dress claims involve intensely factual issues, courts in this circuit have required trade dress plaintiffs, at the very least, to provide adequate notice by including in their complaint a complete recitation of the concrete elements of their alleged trade dress." *Tangle*, 698 F. Supp. 3d at 1189 (quoting *YZ Prods. v. Redbubble, Inc.*, 545 F. Supp. 3d 756, 767 (N.D. Cal. 2021)). A product's trade dress consists of "its total image and overall appearance; it includes 'features such as size, shape, color, color combinations, texture, or graphics.'" *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1044 n.2 (9th Cir. 1998) (quoting *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 613 (9th Cir. 1989)).

---

[5] As noted, Tangle alleged trade dress infringement for the first time in its SAC. It did not assert a trade dress infringement claim in its original complaint or first amended complaint.

Tangle responds that its SAC offers illustrative photographs of its pink chrome trade dress and alleges that the bright pink color and chrome finish are identical to that used in Aritzia's infringing sculptures. Tangle adds that this chrome finish and color combines with other creative decisions, including interlocking, 90-degree curved pieces of approximately 18 constituent parts. As the district court in *YZ Productions* noted, however, "'images and descriptions . . . of some . . . products are alone insufficient to put [the defendant] on notice of the asserted trade dress'; rather, a complete recitation of the concrete elements of the trade dress is required." 545 F. Supp. 3d at 767 (alteration and omissions in original) (first citing *Crafty Prods., Inc. v. Michaels Cos., Inc.*, 424 F. Supp. 3d 983, 991–92 (S.D. Cal. 2019), *aff'd sub nom. Crafty Prods., Inc. v. Fuqing Sanxing Crafts Co.*, 839 F. App'x 95 (9th Cir. 2020); and then quoting *Mosaic Brands, Inc. v. The Ridge Wallet LLC*, No. 220CV04556ABJCX, 2020 WL 5640233, at *5 (C.D. Cal. Sept. 3, 2020)). We agree and so hold.

Tangle, however, failed to provide a complete recitation of the concrete elements that it contended constituted its protectible trade dress, and merely providing photographs of some products and partial descriptions is insufficient. The district court so informed Tangle and gave Tangle an opportunity to replead, which Tangle declined. The district court did not err in dismissing Tangle's trade dress claim with prejudice. Accordingly, we affirm that portion of the district court's decision.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**[6]

---

[6] Each party shall bear its own costs associated with this appeal.